**TOON–MING WONG, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 19849.**

United States Court of Appeals
Ninth Circuit.

July 18, 1966.

Gordon, Kidder & Price, Los Angeles, Cal., for petitioner.

Manuel L. Real, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civil Section, William B. Spivak, Jr., Asst. U. S. Atty., Los Angeles, Cal., for respondent.

Before BARNES, BROWNING and DUNIWAY, Circuit Judges.

BROWNING, Circuit Judge:

Petitioner seeks review of an order of the Board of Immigration Appeals denying his motion to reopen deportation proceedings and permit him to apply for suspension of deportation under the provisions of section 244(a) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a) (Supp. 1965).

■ The petition for review was filed within six months of the entry of the order denying the motion to reopen, and was therefore timely. Bregman v. I& NS, 351 F.2d 401, 402–403 (9th Cir. 1965); Lopez v. I&NS, 356 F.2d 986 (3d Cir. 1966); Chul Hi Kim v. I&NS, 357 F.2d 904 (7th Cir. 1966). Since petitioner is not challenging the original deportation order but the subsequent denial of collateral relief, petitioner's failure to take an administrative appeal from the deportation order does not bar this petition for review under section 106(c) of the Act, 8 U.S.C. § 1105a(c) (Supp. 1965).

Affidavits filed in support of the motion to reopen asserted the following facts. Petitioner was born in China. He was orphaned while young, and was taken under the care of Mrs. Ben Wong when about nine years old. Mrs. Wong came to the United States to join her husband, a United States citizen, in 1955. In June, 1957, when petitioner was thirteen, he was brought to this country by way of Canada to join the Wong household in Los Angeles, California. His entry into the United States was made under the assumed identity of a Canadian citizen. He has lived in Los Angeles as a foster child of the Wong family from the time of his entry until the present. In June, 1959, a daughter of the Wongs returned to her home in Canada with her four infant children. On instructions of his foster father, petitioner, then sixteen, accompanied her to assist with the children during the journey. The intention was that petitioner would return to his Los Angeles home within a week or two, and resume his high school studies that fall. However, because of an illness in the family, the daughter asked that petitioner be allowed to remain through the balance of the year to help her, and petitioner's foster father agreed. Petitioner remained at his foster sister's Canadian home until January, 1960. He then returned to Los Angeles and resumed his schooling. The affidavits assert that petitioner was under the dominion and control of his foster parents, and that his journey to Canada was the result of his foster parents' orders and not an exercise of his own volition.

The motion to reopen was denied on the ground that the Attorney General would be precluded from considering the merits of an application for suspension because petitioner's six months' absence prevented him from complying with the statutory requirement that the applicant be "physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application." Section 244(a) (1) Immigration & Nationality Act, 8 U.S.C.A. § 1254(a) (1) (Supp. 1965).

■ We held in Wadman v. I&NS, 329 F.2d 812 (9th Cir. 1964), and again in Git Foo Wong v. I&NS, 358 F.2d 151 (9th Cir. 1966), that the rule of Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963), is applicable to the section 244(a) (1) requirement that an applicant be "physically present" for the specified "continuous period." An absence from the country during the statutory period does not invariably break the requisite continuity. "The question is whether the interruption, viewed in balance with its consequences, can be said to have been a significant one under the guides laid down in Fleuti." Wadman, supra, 329 F.2d at 816.

■ The Board distinguished Wadman on the ground that a five-day absence was involved in that case, whereas

in this case the absence was six months.[1] We construe the Board's opinion as holding that a six months' absence barred relief as a matter of law. This was error. The length of absence is relevant, but not alone determinative. Two absences aggregating sixteen months, caused by the wrongful act of the Immigration and Naturalization Service, have been held insufficient to break a five-year "continuous" presence required by section 244(a) (2) of the Act, 8 U.S.C.A. § 1254 (a) (2). McLeod v. Peterson, 283 F.2d 180 (3d Cir. 1960). On the other hand, a very brief absence might suffice if voluntary and accompanied by a realization of possible consequences to the alien's status as a United States resident, particularly if the journey abroad were motivated by a purpose inconsistent with the policies of the Act.

■■ The petitioner relied upon the Board's decision in Matter of Bauer, Int. Dec.No. 1291 (1963), holding that a return was not voluntary and therefore did not constitute an "entry" under section 101(a) (13) of the Act, 8 U.S.C.A. § 1101(a) (13), where the alien "was an unemancipated minor, under the custody and control of his parents, and he had no choice nor was he asked whether he would depart." See United States ex rel. Valenti v. Karmuth, 1 F.Supp. 370 (N.D. N.Y. 1932). The Board distinguished *Bauer* from the present case on the ground that section 244, unlike section 101(a), "contains nothing as to intent and volition in its requirement for physical presence in the United States." Our decisions in *Wadman* and *Git Foo Wong* reject the distinction relied upon by the Board, for, to repeat, we there held that the standard to be applied in determining the legal significance of an interruption in continuity of United Stated residence under section 244 is the same as that which the Supreme Court in *Fleuti* ap-

plied under section 101(a) (13). The test is whether or not it appears from all the circumstances that there was "an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." *Fleuti*, supra, 374 U.S. at 462, 83 S.Ct. at 1812. The petitioner's minority is a relevant circumstance. We decide no more than that. It is for the Board to determine, in the first instance, whether the minor's intent, that of the parent, or of both, is controlling under the statute, and what the intent of the appropriate person or persons in fact was.[2]

The Board's order denying petitioner's motion to reopen is set aside, and the matter remanded to the Board for further proceedings.

---

1. The government's argument that *Fleuti* and *Wadman* are inapplicable because petitioner's original entry was illegal was expressly rejected in *Git Foo Wong*, supra, 358 F.2d at 153.

2. Since no hearing was held we do not consider the various contentions which the government makes as to the merits of petitioner's claims for discretionary relief.