MATTER OF BARRAGAN

In Deportation Proceedings

A-19883045

*Decided by Special Inquiry Officer April 22, 1971*
*Decided by Board September 13, 1971*

The departures of respondent, an alien illegally in the United States, to Mexico on February 2, 1968, and April 3, 1970, pursuant to an administrative grant on each occasion of voluntary departure without the institution of deportation proceedings, were meaningful, rather than casual departures, despite her intent to return and actual return to the United States on the same day or within a short time thereafter. Therefore, the relatively brief periods of her absence from this country broke the continuity of her physical presence in the United States for the purpose of qualifying for suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act, as amended.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor—remained longer.

ON BEHALF OF RESPONDENT:
Otto F. Swanson, Esquire
356 South Broadway
Los Angeles, California 90013
(Brief filed)

ON BEHALF OF SERVICE:
Reece B. Robertson
Trial Attorney

BEFORE THE SPECIAL INQUIRY OFFICER
(April 22, 1971)

The respondent is a 36-year-old widow. As alleged in the order to show cause she admitted through counsel that she is a native and citizen of Mexico; that she entered the United States at San Ysidro, California in April 1970; that she was admitted as a nonimmigrant visitor and authorized to remain in the United States for a temporary period not to exceed 15 days, and that she has not departed from the United States. The respondent further con-

ceded deportability on the charge contained in the order to show cause. On the basis of the foregoing admissions, I have determined and concluded that she is clearly deportable from the United States on said charge.

During the course of the hearing the respondent through counsel submitted an application for suspension of deportation (Exhibit 2). Counsel contended that the respondent was exempt from the provisions of section 244(f) of the Act despite the fact that she is a native of contiguous territory because she is unable to obtain a labor certification as a sewing machine operator. Counsel also requested in the respondent's behalf, in the alternative, the privilege of voluntary departure in lieu of deportation. The Trial Attorney stated for the record that it was the Service's position that inasmuch as the respondent was statutorily ineligible for suspension of deportation the usual investigation conducted in such cases was being waived and that the Service for the purpose of the instant proceedings would concede that the respondent was and had been a person of good moral character for the past seven years.

The respondent testified that she first entered the United States in November 1963 at San Ysidro, California at which time she was admitted as a border crosser for not more than 72 hours. She stated that she has resided here continuously since then except for two departures to Mexico through the port of San Ysidro, California on February 2, 1968, and April 3, 1970. The respondent admitted that on both of the aforementioned dates she had been apprehended by officers of this Service who permitted her to leave the United States voluntarily. She declared that after her first departure on February 2, 1968, she returned to the United States at San Ysidro, California on the same day by presenting her border crossing identification card. She also admitted that after her second voluntary return to Mexico on April 3, 1970, she next returned to the United States at San Ysidro, California on April 10, 1970, again by presenting her border crossing card.

In order to qualify for suspension of deportation under section 244(a)(1) of the Act an applicant must establish, among other things, that he has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of his application for suspension of deportation. The question to be determined in this regard is whether the respondent's departures from the United States to Mexico on February 2, 1968, and April 3, 1970, pursuant to the privilege granted to her on each occasion to depart voluntarily in lieu of

the institution of deportation proceedings, broke the continuity of her physical presence in the United States. Based upon the statements made for the record by the Trial Attorney it is assumed that it is the Service's contention that departures from the United States pursuant to directives of officers of the Service, acting for the Attorney General, cannot be characterized as brief and casual but, rather, were meaningful departures which serve to distinguish the instant case from the precedent decisions rendered in *Wadman* v. *INS*, 329 F.2d 812; *Git Foo Wong* v. *INS*, 358 F.2d 151; and *Toon Ming Wong* v. *INS*, 363 F.2d 234, all of which were bottomed upon the rationale of the Supreme Court in *Rosenberg* v. *Fleuti*, 374 U.S. 449.

It is the respondent's position, however, that although it is admitted that she left the United States on two occasions such departures were not a significant and meaningful interruption of her presence in the United States, citing *Matter of Wong*, 12 I. & N. Dec. 271 (May 10, 1967 and June 23, 1967). The respondent testified that on both occasions when she was required by officers of this Service to leave the United States she had intended to return to this country immediately. Although she departed to Mexico on February 2, 1968, with her daughter, a native and citizen of Mexico who was in the United States illegally also, she was not accompanied by the child on the occasion of her last departure on April 3, 1970. The respondent stated that because her daughter had remained in the United States it was her, the respondent's, desperate intention to return to the United States as soon as possible.

To state the primary issue in this case in another way: Does the departure by an alien who is illegally in the United States, pursuant to an administrative grant of voluntary departure without the institution of deportation proceedings, followed by a return to the United States on the same day or within a short time thereafter, break the continuity of physical presence required to qualify for suspension of deportation under section 244(a)(1)?

It has been held that deportation terminates residence. *Mrvica* v. *Esperdy*, 376 U.S. 560 (March 30, 1964). An alien who departs pursuant to an order of exclusion and deportation breaks the continuity of his residence. *Matter P—*, 8 I. & N. Dec. 167; *Matter of R—*, 8 I. & N. Dec. 598. It has also been held that departure pursuant to an order of voluntary departure granted in a deportation hearing does not break the continuity of residence for section 249 relief. *Matter of Contreras-Sotelo*, 12 I. & N. Dec. 596 (December 26, 1967); *Matter of Benitez-Saenz*, 12 I. & N. Dec.

593 (December 22, 1967). The Board of Immigration Appeals has also held that enforced departure from the United States without formal exclusion or deportation proceedings did not break the continuity of domicile. *Matter of C—*, 2 I. & N. Dec. 168 (June 27, 1944).

Attention is directed to the fact that while the decisions referred to in the paragraph above are concerned with the continuity of residence and domicile under specified situations, none of said decisions dealt directly with the issue involved in the instant case, namely, the continuity of *physical presence* in the United States following a departure pursuant to a grant of administrative voluntary departure privilege. However, in discussing the specific statutory prerequisites for suspension of deportation, it is stated in *Immigration Law and Procedure*, Gordon and Rosenfield, in section 7.9d(2) on Page 7–95: "Different qualifying periods of sojourn are required (7 and 10 years) for the two statutory categories. But the mere maintenance of a domicile or place of general abode is not sufficient. The statute is explicit in commanding in each instance continuous physical presence in the United States for the requisite period. The requirement of continuous physical presence, *as distinguished from residence or domicile*, is new in the 1952 Act. ****" (Emphasis added.)

The Board has also recognized that "residence" and "physical presence" are not synonymous. *Matter of Young*, 11 I. & N. Dec. 38 (January 29, 1965); *Matter of Graham*, 11 I. & N. Dec. 234 (June 25, 1965). Considering that both departures of the respondent from the United States in 1968 and 1970 were effected by her in order to avoid the institution of deportation proceedings by this Service, said departures must be regarded as meaningful rather than merely brief and casual, despite the intent and actual return to the United States shortly after the departures. In the premises, it is concluded that the respondent's departures do not come within the rationale of the *Wadman* decision, *supra*. Inasmuch as I find that, in light of the foregoing, the respondent cannot establish continuous physical presence in the United States for the required seven-year period, it is concluded that she is statutorily ineligible for the privilege of suspension of deportation.

During the hearing the respondent testified that she has been a widow since her husband's death on December 11, 1956; that in Mexico she has her mother, brothers and sisters; that her only close relatives in the United States are her daughter and a

brother who is a lawful resident of this country; that her daughter was born in Mexico on February 2, 1957, shortly after her husband's death; that she has never been arrested in the United States or Mexico; that she has never been deported from the United States; that she is not now and has never been a member of the Communist Party or any other subversive organization; that she is employed as a sewing machine operator; that she has raised her daughter without aid from any other person; that she attempted to obtain an immigrant visa but was unsuccessful because she was financially unable to prosecute such application; that if suspension of deportation is denied she would be ready, willing and able to depart from the United States at her own expense when required to do so; that prior to coming to the United States in 1963 she had resided on a very small ranch in Mexico with her mother, brothers and sisters; that life there was very hard; that they were very poor and there was no opportunity for employment; that there was no school in the vicinity of the ranch; that the same conditions exist in that area today; that if she were required to leave the United States she would be compelled to return to the ranch inasmuch as there is no other place she could go; that she would be unable to support herself; that during her residence in the United States she has been sending money to Mexico for the support of her mother; that her daughter is attending school in the United States, and that if her deportation should be required she designated Mexico as the country of deportation.

Inasmuch as the respondent is statutorily ineligible for suspension of deportation, under the facts in the instant case, the maximum relief for which the respondent can qualify is voluntary departure in lieu of deportation. As a matter of administrative discretion, said alternative form of relief which was applied for in her behalf by counsel will be granted.

**ORDER:** It is ordered that the respondent's application for suspension of deportation be, and the same is hereby, denied.

*It is further ordered* that in lieu of an order of deportation the respondent be granted voluntary departure, without expense to the Government, on or before July 22, 1971, or any extension beyond such date as may be granted by the District Director, and under such conditions as the District Director shall direct.

*It is further ordered* that if the respondent fails to depart when and as required, the privilege of voluntary departure shall be withdrawn without further notice or proceedings and the following shall thereupon become immediately effective: The re-

spondent shall be deported from the United States to Mexico on the charge contained in the order to show cause.

## BEFORE THE BOARD
### (September 13, 1971)

The respondent is a 36-year-old native and citizen of Mexico who has conceded deportability on the above-stated charge. She initially entered the United States in November 1963 on a border crossing identification card which was limited to 72 hours. She remained in the United States continuously except for a one-day departure to Mexico in February 1968 and approximately a one-week departure to Mexico in April 1970. On both of these occasions she was apprehended by officers of the Service and was permitted to depart voluntarily in lieu of the institution of formal deportation proceedings. She reentered the United States after the two departures utilizing her border crossing identification card to regain entry. At the hearing the respondent conceded deportability. This appeal is from the special inquiry officer's decision of April 22, 1971 which denied the respondent's application for suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act. The basis for denial was that the respondent was statutorily ineligible for such relief since she had not met the requirement of being physically present continuously for not less than seven years in the United States. The special inquiry officer found the respondent deportable, but granted the requested privilege of voluntary departure on or before July 22, 1971.

The Board has reviewed the evidence and is satisfied that deportability has been established by evidence that is clear, convincing, and unequivocal. The special inquiry officer has prepared a well reasoned decision encompassing all of the pertinent elements of this case. We concur in his conclusion that the respondent's departures from the United States were meaningful, rather than casual, departures and that the relatively brief periods of her absence from this country constituted breaks in the continuity of her physical presence in the United States. The evidence of record establishes that the respondent was apprehended on both occasions and chose to depart voluntarily rather than to become the subject of deportation proceedings. The departures were therefore "enforced" departures and support the conclusion that there were two clear breaks in the required continuity of physical presence in the United States.

After carefully appraising the evidence in the light of the pertinent legal principles and case law, the Board can find no basis for disturbing the decision of the special inquiry officer. In granting the respondent voluntary departure, the special inquiry officer extended the maximum relief that may be awarded. Since the execution of the special inquiry officer's order has been stayed during the pendency of this appeal, the Board will provide for the voluntary departure of the respondent within 90 days from the date of this decision.

**ORDER:** It is ordered that the appeal be dismissed.

*It is further ordered* that, pursuant to the special inquiry officer's order, the respondent be permitted to depart from the United States within 90 days from the date of this decision or any extension beyond that time as may be granted by the District Director, and that, in the event of failure so to depart, the respondent shall be deported as provided in the special inquiry officer's order.